JUDGE SCHEINDLIN                    COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -X   11 CV      3572

AMERICAN HOME ASSURANCE COMPANY
and NATIONAL UNION FIRE INSURANCE          Civil Action No.
COMPANY OF PITTSBURGH, PA,

             Plaintiffs,          **DECLARATORY JUDGMENT
                            COMPLAINT**

    vs.

LENNAR CORPORATION,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Plaintiffs American Home Assurance Company ("American Home") and National Union

Fire Insurance Company of Pittsburgh, PA ("National Union") (collectively, "Plaintiffs"),

through their attorneys, Mound Cotton Wollan & Greengrass, as and for their Declaratory

Judgment Complaint against Defendant Lennar Corporation, and any subsidiaries, affiliates, and

related companies ("Lennar") allege upon information and belief:

## THE PARTIES

    1.    Plaintiff American Home is a New York corporation with is principal place of

business in New York, New York.

    2.    Plaintiff National Union is a Pennsylvania corporation with its principal place of

business in New York, New York.

    3.    Defendant Lennar is a Delaware Corporation with its principal place of business

in Miami, Florida.

## JURISDICTION AND VENUE

    4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332, because there is complete diversity of citizenship between Plaintiffs and Lennar, and the

amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.      This Court has personal jurisdiction over Defendant Lennar because Lennar does business in New York.

6.      Venue is proper in this judicial district by virtue of the following General Condition in one of the subject insurance policies:

> CHOICE OF LAW AND FORUM: The construction, validity and performance of this Policy will be governed by the laws of the U.S.A. and the State of New York. We and you hereby expressly agree that all claims and disputes will be brought for adjudication either in the Supreme Court of the State of New York in and for the County of New York or in the U.S. District Court for the Southern District of New York.

Venue is also proper pursuant to 28 U.S.C. § 1391(a)(3), because Lennar is subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

7.      American Home issued its "Corporate Kidnap and Ransom/Extortion Insurance Policy," Policy No. 647-7849, to Lennar, effective January 1, 2006 to January 1, 2009 ("Policy 1").

8.      National Union issued its "Corporate Kidnap and Ransom/Extortion Insurance Policy," Policy No. 85-053-298, to Lennar, effective January 1, 2009 to January 1, 2010 ("Policy 2").

9.      National Union issued its "Corporate Kidnap and Ransom/Extortion Insurance Policy," Policy No. 99-330-532, to Lennar, effective January 1, 2010 to January 1, 2013 ("Policy 3").

10.      Policy 1, Policy 2, and Policy 3 (collectively, "Policies") provide coverage for Insured Events, including personal extortion upon the insured person(s) and property damage extortion upon insured persons.

11.     Each Policy contains a limit of liability of $20,000,000.00 per loss, with no annual aggregate.  There is no deductible for a personal extortion or property damage extortion under the Policies.

12.     Personal extortion is defined in the Policies as:

O.     **Personal extortion** means any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to:

. . .

b.     divulge any confidential private or secret information unique to the insured person(s).

13.     Property damage extortion is defined in the Policies as:

S.     **Property damage extortion** means any threat or connected series of threats for the purpose of demanding **Ransom Monies** communicated to **you** or other **insured person(s)** to:

. . .

3.     reveal a **trade secret** or other **proprietary information** of yours.

14.     The Policies define proprietary information as "any confidential, private or secret information unique to you or your business."

15.     The Policies define trade secret as "a secret process, formula, tool, mechanism, or compound known to you, but not patented, which is used directly to produce some article of trade having a commercial value."

16.     The Policies define the term **"Ransom Monies"** as:

**Ransom Monies** means any monies which **you** or **insured person(s)** has paid or lost under circumstances described in Insured Event A.  The term **monies** as used herein includes cash, monetary instruments, bullion, or the fair market value of any securities, property, or services.

17.     On or about September 24, 2010, Lennar submitted a claim under the Policies for personal extortion and property damage extortion directed against the insured and the insured persons(s).

18.     The claim arises from a highly contentious and acrimonious commercial dispute between Lennar, on the one hand, and Nicolas Marsch ("Marsch") and his related entities, on the other hand, which is not covered under the Policies.

19.     Lennar's claim under the Policies is premised on these allegations: that it participated in the development of certain properties through a joint venture entity known as HCC Investors, LLC ("HCC"); that Marsch became involved in connection with the development activities of HCC, but the relationship soured over time; and that Marsch threatened to disclose and did disclose confidential proprietary and trade secret information in order to extort monetary and other consideration from Lennar.

20.     Marsch, on the other hand, contends: that Lennar wrongfully deprived him of his share of the revenues and/or other profits from his investments in joint ventures with Lennar; that Lennar misappropriated business opportunities with Marsch; and that Lennar deprived Marsch of valuable consideration in those properties. Marsch attempted to review Lennar's books and accounting records, but Lennar allegedly refused, and Marsch threatened to demand an SEC investigation into Lennar's business dealings and alleged misappropriation of its business investments with him and other investors. Marsch repeatedly demanded that Lennar give him the monies that he alleges he is entitled to, and attempted to resolve the commercial dispute without resorting to litigation.

21.     Lennar claims it is unaware of any injunctions, temporary restraining orders, or police reports related to the purported extortion events.

22.     There are at least seven litigations currently pending between Marsch and Lennar in California and Florida, and three adversary proceedings have been filed in the Chapter 11 bankruptcy proceedings for Briarwood Capital, LLC, a business entity wholly-owned by Marsch, and Marsch.

## AS AND FOR A FIRST CAUSE OF ACTION
### Declaratory Judgment That There is No Coverage Under Policy 1

23.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

24.     Policy 1 defines "personal extortion" as "any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to: . . . b. divulge any confidential private or secret information unique to the insured person(s)."

25.     Policy 1 defines "property damage extortion" as  "any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to: . . .3. reveal a trade secret or other proprietary information of yours."

26.     There were no threats or connected series of threats communicated to Lennar to reveal information that was confidential, private, secret, or proprietary.

27.     To the extent that there may have been any threats or connected series of threats that were communicated to Lennar to reveal information that may be deemed confidential, private, secret, or proprietary, such threats were not made for the purpose of demanding Ransom Monies, but rather for the purpose of seeking to collect monies that Marsch alleges he is entitled to from his joint ventures with Lennar and/or for the purpose of trying to resolve the commercial dispute without resorting to litigation.

28.     There has not been a "personal extortion" or "property damage extortion" as defined in Policy 1, and thus coverage has not been triggered under Policy 1.

29.     Accordingly, American Home is entitled to a declaration that there is no coverage for Lennar's claim under Policy 1, and that American Home does not have any liability to Lennar under Policy 1.

## AS AND FOR A SECOND CAUSE OF ACTION
### Declaratory Judgment That There is No Coverage Under Policy 2

30.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

31.     Policy 2 defines "personal extortion" as "any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to: . . . b. divulge any confidential private or secret information unique to the insured person(s)."

32.     Policy 2 defines "property damage extortion" as "any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to: . . .3. reveal a trade secret or other proprietary information of yours."

33.     There were no threats or connected series of threats communicated to Lennar to reveal information that was confidential, private, secret, or proprietary.

34.     To the extent that there may have been any threats or connected series of threats that were communicated to Lennar to reveal information that may be deemed confidential, private, secret, or proprietary, such threats were not made for the purpose of demanding Ransom Monies, but rather for the purpose of seeking to collect monies that Marsch alleges he is entitled to from his joint ventures with Lennar and/or for the purpose of trying to resolve the commercial dispute without resorting to litigation.

35.     There has not been a "personal extortion" or "property damage extortion" as defined in Policy 2, and thus coverage has not been triggered under Policy 2.

36.     Accordingly, National Union is entitled to a declaration that there is no coverage for Lennar's claim under Policy 2, and that National Union does not have any liability to Lennar under Policy 2.

## AS AND FOR A THIRD CAUSE OF ACTION
### Declaratory Judgment That There is No Coverage Under Policy 3

37.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

38.     Policy 3 defines "personal extortion" as "any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to: . . . b. divulge any confidential private or secret information unique to the insured person(s)."

39.     Policy 3 defines "property damage extortion" as "any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to: . . .3. reveal a trade secret or other proprietary information of yours."

40.     There were no threats or connected series of threats communicated to Lennar to reveal information that was confidential, private, secret, or proprietary.

41.     To the extent that there may have been any threats or connected series of threats that were communicated to Lennar to reveal information that may be deemed confidential, private, secret, or proprietary, such threats were not made for the purpose of demanding Ransom Monies, but rather for the purpose of seeking to collect monies that Marsch alleges he is entitled to from his joint ventures with Lennar and/or for the purpose of trying to resolve the commercial dispute without resorting to litigation.

42.     There has not been a "personal extortion" or "property damage extortion" as defined in Policy 3, and thus coverage has not been triggered under Policy 3.

43.     Accordingly, National Union is entitled to a declaration that there is no coverage under Policy 3, and that National Union does not have any liability to Lennar under Policy 3.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Declaratory Judgment That There is No Liability Under Policy 1 Because Lennar Has Failed to Show a "Loss" Under Policy 1**

44.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

45.     Policy 1 provides:

**Loss** includes the following reasonable and necessary expenses or costs incurred by you directly and solely as a result of an Insured Event:

**1. RANSOM MONIES**

**Ransom Monies** paid by you directly from a **kidnapping** or **extortion** occurring during the Policy Period.

**Ransom Monies** means any monies which you or **insured person(s)** has paid or lost under circumstances described in Insured Event A. The term **monies** as used herein includes cash, monetary instruments, bullion, or the fair market value of any securities, property, or services.

46.     Lennar has failed to provide any proof of any "expenses or costs" that were paid by Lennar in connection with Marsch's alleged demands.

47.     Lennar has failed to provide proof of any Ransom Monies that were paid by Lennar in connection with Marsch's alleged demands.

48.     Therefore, Lennar has failed to show a "Loss" under Policy 1.

49.     Accordingly, American Home is entitled to a declaration that American Home has no liability to Lennar under Policy 1.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Declaratory Judgment That There is No Liability Under Policy 2 Because Lennar Has Failed to Show a "Loss" Under Policy 2

50.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

51.     Policy 2 provides:

**Loss** includes the following reasonable and necessary expenses or costs incurred by you directly and solely as a result of an Insured Event:

### 1. RANSOM MONIES

**Ransom Monies** paid by you directly from a **kidnapping** or **extortion** occurring during the Policy Period.

**Ransom Monies** means any monies which you or **insured person(s)** has paid or lost under circumstances described in Insured Event A.  The term **monies** as used herein includes cash, monetary instruments, bullion, or the fair market value of any securities, property, or services.

52.     Lennar has failed to provide any proof of any "expenses or costs" that were paid by Lennar in connection with Marsch's alleged demands.

53.     Lennar has failed to provide proof of any Ransom Monies that were paid by Lennar in connection with Marsch's alleged demands.

54.     Therefore, Lennar has failed to show a "Loss" under Policy 2.

55.     Accordingly, National Union is entitled to a declaration that National Union has no liability to Lennar under Policy 2.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Declaratory Judgment That There is No Liability Under Policy 3 Because Lennar Has Failed to Show a "Loss" Under Policy 3

56.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

57.    Policy 3 provides:

**Loss** includes the following reasonable and necessary expenses or costs incurred by you directly and solely as a result of an Insured Event:

### 1. RANSOM MONIES

**Ransom Monies** paid by you directly from a **kidnapping** or **extortion** occurring during the Policy Period.

**Ransom Monies** means any monies which you or **insured person(s)** has paid or lost under circumstances described in Insured Event A.  The term **monies** as used herein includes cash, monetary instruments, bullion, or the fair market value of any securities, property, or services.

58.    Lennar has failed to provide any proof of any "expenses or costs" that were paid by Lennar in connection with Marsch's alleged demands.

59.    Lennar has failed to provide proof of any Ransom Monies that were paid by Lennar in connection with Marsch's alleged demands.

60.    Therefore, Lennar has failed to show a "Loss" under Policy 3.

61.    Accordingly, National Union is entitled to a declaration that National Union has no liability to Lennar under Policy 3.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Declaratory Judgment That There is No Liability Under Policy 1 Because Lennar Has Failed to Comply With Conditions Precedent to Liability

62.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

63.     Policy 1 contains the following Conditions Precedent to Liability:

### V. CONDITIONS PRECEDENT TO LIABILITY

A.      As a condition precedent to our liability under Insured Event A, you will have approved the payment of Ransom Monies.

B.      In the event of a kidnapping, extortion, wrongful detention, or hijacking of an insured person(s) during the policy period, and in the case of a kidnapping or extortion, prior to the payment of Ransom Monies, you will make every reasonable effort to:

    1.      determine that the kidnapping, extortion, wrongful detention, or hijacking has actually occurred; and

    2.      give immediate oral and written notice to us with periodic and timely updates concurrent with activity during the incident; and

    3.      if it appears to be in the best interest of an insured person(s), notify the national or other appropriate law enforcement agency having jurisdiction over the matter.

64.     Lennar did not give immediate oral and written notice to American Home with respect to the alleged extortion events as required by Condition Precedent B.2.

65.     Lennar failed to notify the national or other appropriate law enforcement agencies as required by Condition Precedent B.3.

66.     Therefore, Lennar failed to comply with Conditions Precedent to liability.

67.     By virtue of the foregoing, American Home is entitled to a declaration that American Home has no liability to Lennar under Policy 1.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### Declaratory Judgment That There is No Liability Under Policy 2 Because Lennar Has Failed to Comply With Conditions Precedent to Liability

68.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

69.    Policy 2 contains the following Conditions Precedent to Liability:

### V. CONDITIONS PRECEDENT TO LIABILITY

A.    As a condition precedent to our liability under Insured Event A, you will have approved the payment of Ransom Monies.

B.    In the event of a kidnapping, extortion, wrongful detention, or hijacking of an insured person(s) during the policy period, and in the case of a kidnapping or extortion, prior to the payment of Ransom Monies, you will make every reasonable effort to:

    1.    determine that the kidnapping, extortion, wrongful detention, or hijacking has actually occurred; and

    2.    give immediate oral and written notice to us with periodic and timely updates concurrent with activity during the incident; and

    3.    if it appears to be in the best interest of an insured person(s), notify the national or other appropriate law enforcement agency having jurisdiction over the matter.

70.    Lennar did not give immediate oral and written notice to National Home with respect to the alleged extortion events as required by Condition Precedent B.2.

71.    Lennar failed to notify the national or other appropriate law enforcement agencies as required by Condition Precedent B.3.

72.    Therefore, Lennar failed to comply with Conditions Precedent to liability.

73.    By virtue of the foregoing, National Union is entitled to a declaration that National Union has no liability to Lennar under Policy 2.

## AS AND FOR A NINTH CAUSE OF ACTION
### Declaratory Judgment That There is No Liability Under Policy 3 Because Lennar Has Failed to Comply With Conditions Precedent to Liability

74.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

75.     Policy 3 contains the following Conditions Precedent to Liability:

### V. CONDITIONS PRECEDENT TO LIABILITY

A.      As a condition precedent to our liability under Insured Event A, you will have approved the payment of Ransom Monies.

B.      In the event of a kidnapping, extortion, wrongful detention, or hijacking of an insured person(s) during the policy period, and in the case of a kidnapping or extortion, prior to the payment of Ransom Monies, you will make every reasonable effort to:

      1.      determine that the kidnapping, extortion, wrongful detention, or hijacking has actually occurred; and

      2.      give immediate oral and written notice to us with periodic and timely updates concurrent with activity during the incident; and

      3.      if it appears to be in the best interest of an insured person(s), notify the national or other appropriate law enforcement agency having jurisdiction over the matter.

76.     Lennar did not give immediate oral and written notice to National Home with respect to the alleged extortion events as required by Condition Precedent B.2.

77.     Lennar failed to notify the national or other appropriate law enforcement agencies as required by Condition Precedent B.3.

78.     Therefore, Lennar has failed to comply with Conditions Precedent to liability.

79.     By virtue of the foregoing, National Union is entitled to a declaration that National Union has no liability to Lennar under Policy 3.

## AS AND FOR A TENTH CAUSE OF ACTION
### Declaratory Judgment That There is No Liability Under Policy 1 Because Applicable Exclusions Preclude Coverage of Lennar's Claims

80.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

81.     Policy 1 contains the following Exclusion:

### III. EXCLUSIONS

The Policy does not apply to any loss arising out of, based upon, attributable to or involving, directly or indirectly any of the following:

A.      The fraudulent, dishonest, or criminal acts of insured person(s), or any person authorized by you to have custody of Ransom Monies. This exclusion will not apply to the payment of Ransom Monies by an insured person(s) in a situation where local authorities have declared such payment illegal.

82.     Upon information and belief, Lennar engaged in fraudulent, dishonest, and/or criminal acts with respect to its business practices and accounting methods.

83.     According to Marsch, Marsch made a $39 million contribution to HCC, and Lennar stole Marsch's money by having it wired out to Lennar affiliates so that it would not appear on Lennar's books.

84.     According to Marsch, Lennar told Marsch that their joint real estate venture was not profitable, even though it appears to be highly successful, in order to deprive Marsch of his share of revenues and/or other profits.

85.     Marsch claims that Lennar failed to document and account for Marsch's fifty percent interest in their joint real estate venture.

86.     Marsch claims that Lennar failed to account for hundreds of millions of dollars in revenue from their joint real estate venture.

87.    Marsch claims that Lennar failed to account for millions of dollars in revenue and profits from Lennar's real estate ventures with other investors.

88.    Marsch claims that Lennar breached its fiduciary duties to Marsch and other investors by failing to maintain accurate books and records.

89.    Upon information and belief, Lennar misappropriated business opportunities with its investors, including Marsch.

90.    Marsch claims that he identified a business opportunity and that Marsch and Lennar agreed to pursue that business opportunity jointly, but then Lennar pursued it with another entity and completely excluded Marsch.

91.    Marsch claims that he is entitled to a portion of the proceeds from that misappropriated business opportunity.

92.    If it is determined that any of Marsch's allegations are true, then to that extent this Exclusion is applicable.

93.    If this Exclusion is applicable, then there is no coverage for any loss arising out of Lennar's fraudulent, dishonest, and/or criminal acts, and American Home is entitled to a declaration that American Home has no liability under Policy 1.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### Declaratory Judgment That There is No Liability Under Policy 2 Because Applicable Exclusions Preclude Coverage of Lennar's Claims

94.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

95.    Policy 2 contains the following Exclusion:

## III. EXCLUSIONS

The Policy does not apply to any loss arising out of, based upon, attributable to or involving, directly or indirectly any of the following:

A.  The fraudulent, dishonest, or criminal acts of insured person(s), or any person authorized by you to have custody of Ransom Monies. This exclusion will not apply to the payment of Ransom Monies by an insured person(s) in a situation where local authorities have declared such payment illegal.

96.  Upon information and belief, Lennar engaged in fraudulent, dishonest, and/or criminal acts with respect to its business practices and accounting methods.

97.  According to Marsch, Marsch made a $39 million contribution to HCC, and Lennar stole Marsch's money by having it wired out to Lennar affiliates so that it would not appear on Lennar's books.

98.  According to Marsch, Lennar told Marsch that their joint real estate venture was not profitable, even though it appears to be highly successful, in order to deprive Marsch of his share of revenues and/or other profits.

99.  Marsch claims that Lennar failed to document and account for Marsch's fifty percent interest in their joint real estate venture.

100.  Marsch claims that Lennar failed to account for hundreds of millions of dollars in revenue from their joint real estate venture.

101.  Marsch claims that Lennar failed to account for millions of dollars in revenue and profits from Lennar's real estate ventures with other investors.

102.  Marsch claims that Lennar breached its fiduciary duties to Marsch and other investors by failing to maintain accurate books and records.

103.  Upon information and belief, Lennar misappropriated business opportunities with its investors, including Marsch.

104.   Marsch claims that he identified a business opportunity and that Marsch and Lennar agreed to pursue that business opportunity jointly, but then Lennar pursued it with another entity and completely excluded Marsch.

105.   Marsch claims that he is entitled to a portion of the proceeds from that misappropriated business opportunity.

106.   If it is determined that any of Marsch's allegations are true, then to that extent this Exclusion is applicable.

107.   If this Exclusion is applicable, then there is no coverage for any loss arising out of Lennar's fraudulent, dishonest, and/or criminal acts, and National Union is entitled to a declaration that National Union has no liability under Policy 2.

**AS AND FOR A TWELFTH CAUSE OF ACTION**
**Declaratory Judgment That There is No Liability Under Policy 3 Because Applicable**
**Exclusions Preclude Coverage of Lennar's Claims**

108.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

109.   Policy 3 contains the following Exclusion:

**III. EXCLUSIONS**

The Policy does not apply to any loss arising out of, based upon, attributable to or involving, directly or indirectly any of the following:

A.     The fraudulent, dishonest, or criminal acts of insured person(s), or any person authorized by you to have custody of Ransom Monies.  This exclusion will not apply to the payment of Ransom Monies by an insured person(s) in a situation where local authorities have declared such payment illegal.

110.   Upon information and belief, Lennar engaged in fraudulent, dishonest, and/or criminal acts with respect to its business practices and accounting methods.

111.    According to Marsch, Marsch made a $39 million contribution to HCC, and Lennar stole Marsch's money by having it wired out to Lennar affiliates so that it would not appear on Lennar's books.

112.    According to Marsch, Lennar told Marsch that their joint real estate venture was not profitable, even though it appears to be highly successful, in order to deprive Marsch of his share of revenues and/or other profits.

113.    Marsch claims that Lennar failed to document and account for Marsch's fifty percent interest in their joint real estate venture.

114.    Marsch claims that Lennar failed to account for hundreds of millions of dollars in revenue from their joint real estate venture.

115.    Marsch claims that Lennar failed to account for millions of dollars in revenue and profits from Lennar's real estate ventures with other investors.

116.    Marsch claims that Lennar breached its fiduciary duties to Marsch and other investors by failing to maintain accurate books and records.

117.    Upon information and belief, Lennar misappropriated business opportunities with its investors, including Marsch.

118.    Marsch claims that he identified a business opportunity and that Marsch and Lennar agreed to pursue that business opportunity jointly, but then Lennar pursued it with another entity and completely excluded Marsch.

119.    Marsch claims that he is entitled to a portion of the proceeds from that misappropriated business opportunity.

120.    If it is determined that any of Marsch's allegations are true, then to that extent this Exclusion is applicable.

121.     If this Exclusion is applicable, then there is no coverage for any loss arising out of

Lennar's fraudulent, dishonest, and/or criminal acts, and National Union is entitled to a

declaration that National Union has no liability under Policy 3.

<u>**AS AND FOR A THIRTEENTH CAUSE OF ACTION**</u>
<u>**Rescission of Policy 2**</u>

122.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in

paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect

as if more fully set forth at length.

123.     On or about October 6, 2005, Lennar's Vice President/Treasurer, signed an

Application for AIG WorldSource Kidnap & Ransom/Extortion Corporate Coverage.

124.     In the Application, the insured answered "No" to these questions:

7. Has the Applicant or any person(s) to be covered under this Policy

a. Ever been declined, cancelled or had a policy issued with special conditions by any
insurance carrier?

b. Ever received an actual, attempted or threatened kidnapping, extortion, detention or
hijacking attempt?

c. Have knowledge or information which may reasonably give rise to a claim?

125.     On the basis of these and other representations made by Lennar in the

Application, American Home issued Policy 1 to Lennar.

126.     In or about September 2008, Lennar expressed an interest in renewing Policy 1.

127.     National Union advised that no new application was required for the renewal

term, but in order to evaluate the risk to renew the policy, Lennar was asked to advise of any

changes from the prior application and policy term.

128.     Lennar claims that the first extortion event occurred in 2006, and that the

extortion events are ongoing.

129.   Lennar failed to disclose, at the time of renewal, that it had received an actual, attempted, or threatened extortion.

130.   Lennar failed to disclose, at the time of renewal, that it had knowledge or information that might reasonably give rise to a claim.

131.   Prior to National Union's issuance of Policy 2, Lennar did not inform, advise, or disclose to National Union any information concerning or relating to any actual, attempted, or threatened extortion.

132.   Prior to National Union's issuance of Policy 2, Lennar did not inform, advise, or disclose to National Union that it had any knowledge or information that might reasonably give rise to a claim.

133.   In reliance upon the representations made by Lennar, National Union issued Policy 2 to Lennar.

134.   Policy 2 contains the following General Condition:

U.   CONCEALMENT, MISREPRESENTATION, OR FRAUD:  This Policy is null and void in case of fraud, concealment, or misrepresentation by an **insured person(s)** of a material fact concerning:

   1.   This insurance or the procurement thereof; or
   2.   an **insured persons(s)**; or
   3.   **your** interest in the **insured person(s)** or
   4.   any **loss** or claim presented to us under this Policy.

135.   The actual, attempted, or threatened extortions were material facts concerning the insurance provided under Policy 2 and the procurement thereof.

136.   The actual, attempted, or threatened extortions were material facts concerning the loss or claim presented under Policy 2.

137.   Lennar had a duty to disclose to National Union information relating to the actual, attempted, or threatened extortions allegedly occurring since 2006.

138. By failing to disclose to National Union information relating to the actual, attempted, or threatened extortions allegedly occurring since 2006, Lennar misrepresented and/or concealed material information.

139. If Lennar had not committed a material misrepresentation and/or nondisclosure of information regarding the actual, attempted, or threatened extortions allegedly occurring since 2006, and had provided to National Union at least by January 1, 2009, information pertaining to the actual, attempted, or threatened extortions since 2006, National Union would not have issued Policy 2.

140. As a result of Lennar's concealment, misrepresentation, non-disclosure, or fraud, National Union is entitled to rescind Policy 2.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### Rescission of Policy 3

141. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 22 of this Declaratory Judgment Complaint with the same force and effect as if more fully set forth at length.

142. In or about October 2009, Lennar expressed an interest in renewing Policy 2.

143. National Union advised that no new application was required for the renewal term, but in order to evaluate the risk to renew the policy, Lennar was asked to advise of any changes from the prior application and policy term.

144. Lennar claims that the first extortion event occurred in 2006, and that the extortion events are ongoing.

145. Lennar failed to disclose, at the time of renewal, that it had received an actual, attempted, or threatened extortion.

146.   Lennar failed to disclose, at the time of renewal, that it had knowledge or information that might reasonably give rise to a claim.

147.   Prior to National Union's issuance of Policy 3, Lennar did not inform, advise, or disclose to National Union any information concerning or relating to any actual, attempted, or threatened extortion.

148.   Prior to National Union's issuance of Policy 3, Lennar did not inform, advise, or disclose to National Union that it had any knowledge or information that might reasonably give rise to a claim.

149.   In reliance upon the representations made by Lennar, National Union issued Policy 3 to Lennar.

150.   Policy 3 contains the following General Condition:

U.      CONCEALMENT, MISREPRESENTATION, OR FRAUD:  This Policy is null and void in case of fraud, concealment, or misrepresentation by an **insured person(s)** of a material fact concerning:

1.      This insurance or the procurement thereof; or
2.      an **insured persons(s)**; or
3.      **your** interest in the **insured person(s)** or
4.      any **loss** or claim presented to us under this Policy.

151.   The actual, attempted, or threatened extortions were material facts concerning the insurance provided under Policy 3 and the procurement thereof.

152.   The actual, attempted, or threatened extortions were material facts concerning the loss or claim presented under Policy 3.

153.   Lennar had a duty to disclose to National Union information relating to the actual, attempted, or threatened extortions allegedly occurring since 2006.

154.    By failing to disclose to National Union information relating to the actual, attempted, or threatened extortions allegedly occurring since 2006, Lennar misrepresented and/or concealed material information.

155.    If Lennar had not committed a material misrepresentation and/or nondisclosure of information regarding the actual, attempted, or threatened extortions allegedly occurring since 2006, and had provided to National Union at least by January 1, 2010, information pertaining to the actual, attempted, or threatened extortions since 2006, National Union would not have issued Policy 3

156.    As a result of Lennar's concealment, misrepresentation, non-disclosure, or fraud, National Union is entitled to rescind Policy 3.

**WHEREFORE**, Plaintiffs American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh PA respectfully request that the Court issue an Order:

a)    Declaring that there is no coverage for Lennar's claim under Policy 1;

b)    Declaring that there is no coverage for Lennar's claim under Policy 2;

c)    Declaring that there is no coverage for Lennar's claim under Policy 3;

d)    Declaring that American Home has no liability to Lennar under Policy 1 in view of its failure to show a "Loss" under Policy 1;

e)    Declaring that National Union has no liability to Lennar under Policy 2 in view of its failure to show a "Loss" under Policy 2;

f)    Declaring that National Union has no liability to Lennar under Policy 3 in view of its failure to show a "Loss" under Policy 3;

g)    Declaring that American Home has no liability to Lennar under Policy 1 in view of its failure to comply with Conditions Precedent to Liability;

h)    Declaring that National Union has no liability to Lennar under Policy 2 in view of its failure to comply with Conditions Precedent to Liability;

i)    Declaring that National Union has no liability to Lennar under Policy 3 in view of its failure to comply with Conditions Precedent to Liability;

j)    Declaring that American Home has no liability to Lennar under Policy 1 in view of applicable Exclusions;

k)    Declaring that National Union has no liability to Lennar under Policy 2 in view of applicable Exclusions;

l)    Declaring that National Union has no liability to Lennar under Policy 3 in view of applicable Exclusions;

m)  Rescinding Policy 2;

n)  Rescinding Policy 3;

o)  Awarding American Home and National Union attorneys' fees, costs, disbursements, and interest; and

p)  Such other and further relief as deemed just and proper.

.Dated: New York, New York
        May 25, 2011

MOUND COTTON WOLLAN & GREENGRASS

By: _____

Jeffrey S. Weinstein, Esq. (JW-2619)
Sara F. Lieberman, Esq. (SL-3969)
One Battery Park Plaza
New York, NY 10004-1486
Tel: (212) 804-4200
Fax: (212) 344-8066
Email: jweinstein@moundcotton.com
Email: slieberman@moundcotton.com

*Attorneys for Plaintiffs AMERICAN HOME
ASSURANCE COMPANY AND NATIONAL
UNION FIRE INSURANCE COMPANY OF
PITTSBURGH PA*